IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRELL J. MAR, SR., Individually and )
DARRELL J. MAR, SR. as Parent and )
Natural Guardian of DARRELL J. MAR, JR., )
        Plaintiffs, )
         )
       vs )   Civil Action No. 05-19
         )
CITY OF MCKEESPORT, JOSEPH PERO, )
WAYNE DENNIS WYNN, DEPUTY CHIEF )
MARK HOLTZMAN, DENNIS LOPRETTO, )
TODD GEBIS, SAMUEL L. BOSTIC, JR., )
JAMES TAYLOR, ARTHUR PERO, SCOTT )
CAMPBELL, SHELLY GOULD, individually )
and in their official capacity, )
        Defendants. )

REPORT AND RECOMMENDATION

I. <u>Recommendation</u>:

It is respectfully recommended that the defendants' motion for summary judgment (Document No. 65) be granted as to Counts III and IV of the second amended complaint in their entirety, Counts V and VI on the claim for use of excessive force against defendants Holtzman, Bostic, Jr., Taylor, Gould, and Arthur Pero, Counts VII and VIII as to defendants Holtzman, Bostic, Jr., Taylor, Gould and Arthur Pero, and on the claim for punitive damages against the City of McKeesport and the individual defendants in their official capacities, and denied in all other respects.

II. <u>Report</u>:

Presently before the Court is the defendants' motion for summary judgment. For reasons discussed below, their motion for summary judgment should be granted in part and

denied in part.

The plaintiffs, Darrell J. Mar, Sr., and his son, Darrell J. Mar. Jr., commenced this action to redress alleged violations of their civil rights which occurred on the evening of November 29, 2004, when members of the McKeesport Police Department entered their apartment without a search warrant to search for Kahule Cochrane, who was wanted for a recently-committed murder. The plaintiffs complain that the intrusion into their home was unlawful, at which time they were subjected to egregious conduct which caused them injuries. Named as defendants are the City of McKeesport ("City"), its Police Chief Joseph Pero, its Deputy Chief Mark Holtzman and its police officers Wayne Dennis Wynn, Dennis Lopretto, Todd Gebis, Samuel L. Bostic, Jr., James Taylor, Arthur Pero, Scott Campbell and Shelly Gould, all of whom are said to have violated the plaintiffs' civil rights under 42 U.S.C. § 1983. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367.

The record shows that on the evening of November 29, 2004, at approximately 6:48 p.m., a dispatcher from Allegheny County 911 advised representatives of the City's Police Department that a caller had informed them that Kahule Cochrane was located in Apartment 10G in Crawford Village, where he was armed, dangerous, and accompanied by other individuals (defendants' statement of unopposed material facts at ¶¶ 2, 16). Kahule Cochrane was known to the City Police Department for his violent propensities, was known to be a resident of Crawford Village, and was wanted for a recently-committed murder in the neighboring community of Duquesne. (Id. at ¶¶ 1, 18).

The search of Apartment 10G was planned and directed by defendant Mark Holtzman, who did not obtain a search warrant (Id. at ¶¶ 3, 8). Prior to conducting the search,

Holtzman verified with Allegheny County 911 that they had obtained the informant's name and telephone number; however, Holtzman did not attempt to contact the informant prior to the search, fearing it would eliminate the element of surprise and pose a risk to the informant if she was with Cochrane (Id. at ¶ 9). Based on the information received from Allegheny County 911, Holtzman believed there was probable cause for the search, and that exigent circumstances existed, so as to require the search to be conducted immediately (Id.).

All individual defendants with the exception of Police Chief Joseph Pero participated in the search; however, the only defendants to enter the apartment were Dennis Lopretto, Scott Campbell, Todd Gebis, and Wayne Dennis Wynn (Id. at ¶¶ 4-5). The other participants in the search (defendants Holtzman, Arthur Pero, Samuel Bostic, Jr., James Taylor, and Shelly Gould) remained outside of the apartment to secure the area (Id. at ¶ 6).

At the time of the search, Apartment 10G was occupied only by plaintiffs Darrell Mar, Sr., who was then 38 years old, and his son, Darrell Mar, Jr., who was then 10 years old. Prior to entering the plaintiffs' apartment, defendant Lopretto knocked on the door and identified himself as a police officer (Id. at ¶ 10). Hearing knocks at the door, Darrell Mar, Sr. unlocked the door; however, Mr. Mar testified that he did not open the door, rather, it was forced open by police officers (Id. at ¶ 17). In contrast, the defendants aver that Mr. Mar began to open the door, at which point defendant Lopretto pushed it open (Id. at ¶ 11).

The plaintiffs testified that upon entry into their apartment, police officers threw Mr. Mar on the floor, forcefully restrained him there for a period of time, and placed a gun at his head before permitting him to rise and sit on the couch (Id. at ¶ 17). They also testified that a police officer grabbed Darrell Mar, Jr. by the shirt sleeve, forcefully shoved him against a wall,

cursed at him and placed a gun to his face (Id.).

The search of the plaintiffs' apartment took approximately five minutes (Id. at ¶ 15).  By approximately 7:19 p.m., City police officers had cleared Crawford Village (Id. at ¶ 16). According to the plaintiffs, the police officers gave no explanation for their acts, wrecked havoc on their home, and caused Darrell Mar, Jr. to suffer extreme emotional distress.

In Counts I and II of their second amended complaint (Count I as to Mr. Mar, Count II as to his son), the plaintiffs contend that the City violated their due process rights and Fourth Amendment rights to be free from a warrantless search of their home and the use of excessive force due to its failure to adequately train its police officers and its policy of condoning improper police conduct.  In Counts III and IV (Count III as to Mr. Mar, Count IV as to his son), the plaintiffs complain that defendant Police Chief Joseph Pero violated their Fourth Amendment rights under a theory of supervisory liability, as he acquiesced in his subordinates' unlawful acts. In Counts V and VI (Count V as to Darrell Mar, Jr., Count VI as to his father), defendants Wynn, Holtzman, Lopretto, Gebis, Bostic, Jr., Taylor, Arthur Pero, Campbell and Gould are said to have violated the plaintiffs' due process rights and Fourth Amendment rights to be free from a warrantless search of their home and the use of excessive force.  In Counts VII and VIII (Count VII as to Mr. Mar, Count VIII as to his son), the plaintiffs set forth claims for assault and battery against defendants Wynn, Holtzman, Lopretto, Gebis, Bostic, Jr., Taylor, Arthur Pero, Campbell and Gould.  In Count IX, Mr. Mar contends that the City and members of its police department, including defendant Wynn, have retaliated against him for filing this lawsuit by following him, stopping a vehicle he was riding in, and searching him without cause.  Based on these complained-of acts, the plaintiffs seek compensatory and punitive damages.

The defendants have moved for summary judgment on all claims brought against them. Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movants are entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

With respect to the claims against the City in Counts I and II of the second amended complaint, the defendants insist that the plaintiffs cannot show their alleged injuries were caused by a City policy or custom. We disagree.

It is well settled that a municipality like the City "cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000), cert. denied, 121 S.Ct. 1081 (2001). Rather, to establish a § 1983 claim against it, a complainant "must demonstrate that the violation of his rights was caused by either a policy or custom of the municipality." Id.

In Berg, supra, the Third Circuit Court of Appeals explained:

Policy is made when a decisionmaker possessing final
authority to establish municipal policy with respect to the
action issues an official proclamation, policy, or edict...
Customs are practices of state officials so permanent and
well settled as to virtually constitute law.

Id. (citations omitted). In cases where "a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." Id. at 276.

In Counts I and II, the plaintiffs premise their claim of municipal liability on the City's alleged failure to train its police officers in such areas as effectuating a proper search of a premises, and in not using excessive force on its citizens. In addition, the plaintiffs assert that the

City has a policy of supporting the manner in which its police officers behave toward suspects, including acts which violate its citizens' rights.

In moving for summary judgment on these claims, the defendants argue that the plaintiffs have adduced no evidence of a formal policy, custom or practice of the City which led to their alleged injuries. They also argue that the plaintiffs have failed to produce any evidence of inadequacies in the City's training program.

To establish municipal liability on a "failure to train" theory, a plaintiff must demonstrate that a city's failure to train its police officers "reflects a deliberate or conscious choice by policymaking officials" and "amounts to deliberate indifference to the rights of persons with whom the police come into contact." Grazier Ex Rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003). The United States Supreme Court has explained:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

City of Canton v. Harris, 489 U.S. 378, 390 (1989).

As gleaned from the record, the plaintiffs cannot establish municipal liability on a "failure to train" theory. The individual defendants deposed in this case -- Mark Holtzman, Dennis Lopretto and Wayne Dennis Wynn -- all testified that they received mandatory police training before beginning their employment with the City; these defendants also testified that since being employed by the City, they received all mandatory training updates, as well as

additional training sponsored by the City and training on their own (statement of facts at ¶ 14).

Our Court of Appeals has counseled that "[t]he scope of failure to train liability is a narrow one." Grazier Ex Rel. White, supra, 328 F.3d at 125. Thus, in cases as here,

> [t]o survive summary judgment on a failure to train theory,
> the [plaintiff] must present evidence that the need for more
> or different training was so obvious and so likely to lead
> to the violation of constitutional rights that the policymaker's
> failure to respond amounts to deliberate indifference.

Brown v. Muhlenberg Tp., 269 F.3d 205, 216 (3d Cir. 2001), citing City of Canton, 489 U.S. at 390. Here, the plaintiffs have not demonstrated that the City's training program was inadequate, or that it had reason to believe it was necessary to retrain the individual defendants on how to effectuate a proper search or utilize proper force.

Still, a municipality may be held liable for civil rights violations where conduct pursuant to its policy or custom causes a constitutional violation. Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 691 (1978). "[A]n official policy may be inferred from informal acts or omissions of supervisory municipal officials". Colburn v. Upper Darby Twp., 838 F.2d 663, 671 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989). Municipal liability may also arise where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

Here, the record shows that Deputy Chief Holtzman was in charge of the City's police department on the evening of November 29, 2004, and he made the deliberate choice to search Apartment 10G without having obtained a search warrant. To the extent that search was

unlawful, Holtzman may have been deliberately indifferent to the plaintiffs' Fourth Amendment rights, as he directed and participated in the search of Apartment 10G.  Based on these facts, the City may be liable for violating the plaintiffs' civil rights.

In Counts III and IV, the plaintiffs allege that Police Chief Joseph Pero violated their Fourth Amendment rights under a theory of supervisory liability.  These claims lack merit.

"A defendant in a § 1983 action must have personal involvement in the alleged wrongs."  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997).  As a supervisory official, Police Chief Pero may be rendered personally liable under § 1983 if he participated in violating a plaintiff's rights, directed others to violate such rights, or had knowledge of and acquiesced in such violations.  See, Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995).  "[A]ctual knowledge and acquiescence suffices for supervisory liability because it can be equated with personal direction".  Robinson, supra, 120 F.3d at 1294.

Here, Police Chief Joseph Pero has submitted an affidavit, wherein he avers that on November 29, 2004, he was neither on duty, nor within the City, as he was off duty and on vacation at that time.[1]  Joseph Pero asserts that he did not participate in the planning, or the search of Apartment 10G, and prior to its occurrence, he was not consulted by Deputy Chief Holtzman or any other officer who participated in the search.[2]  Further, Joseph Pero avers that subsequent to the search of Apartment 10G, he did not discuss or otherwise communicate with

---

1.  See, affidavit of Joseph Pero at ¶ 3.

2.  Id. at ¶ 5.

the plaintiffs concerning the incident.[3]  Since no evidence shows that Joseph Pero participated in the search, had knowledge of it, or acquiesced in the individual defendants' complained-of acts, he is entitled to summary judgment on Counts III and IV, as the plaintiffs concede.

In Counts V and VI, all individual defendants with the exception of Joseph Pero are said to have violated the plaintiffs' due process rights and Fourth Amendment rights to be free from an unlawful search of their home and use of excessive force.  The United States Supreme Court has stated that "if a constitutional claim is covered by a specific constitutional provision [as the Fourth Amendment is in this case], ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).  Accord, Graham v. Connor, 490 U.S. 386, 395 (1990) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against... physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process', must be the guide for analyzing these claims"); also see, Estate of Smith v. Marasco, 430 F.3d 140, 155 n.12 (3d Cir. 2005).  Thus, we will analyze the plaintiffs' claims under the Fourth Amendment's prohibition against unlawful searches and use of excessive force, rather than under the substantive due process standard.

Under the Fourth Amendment, "[a] search of a home without a warrant is presumptively unreasonable."  Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006), quoting Payton v. New York, 445 U.S. 573, 586 (1980).  There are several exceptions to the warrant requirement, including exigent circumstances and consent.  Couden, supra, 446 F.3d at 496.

---

3.   Id. at ¶ 6.

However, "[r]egardless of whether an exception applies, a warrantless search generally must be supported by probable cause." Id.. Accord, Sharrar v. Felsing, 128 F.3d 810, 829 (3d Cir. 1997) ("warrantless searches are prohibited 'absent probable cause and exigent circumstances'"), quoting Welsh v. Wisconsin, 466 U.S. 740, 749 (1984).

Police have probable cause to search when in view of the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In Gates, the Supreme Court noted that in applying the "totality of the circumstances" analysis, its decisions "have consistently recognized the value of corroboration of details of an informant's tip by independent police work." Id. at 241. Thus, in cases where a police officer receives information through an informant, rather than upon his direct observation, as here, the Gates Court opined that the officer may be justified "even in making a warrantless arrest...'so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" Id. at 242, quoting Jones v. United States, 362 U.S. 257, 269 (1960).

Here, the defendants did not corroborate the details of the informant's tip. Deputy Chief Holtzman verified with Allegheny County 911 that they obtained the caller's name and telephone number. However, Holtzman never attempted to contact the 911 caller to verify her credibility prior to searching the plaintiffs' apartment. Clearly, "[a]n informant's veracity, reliability and basis of knowledge are all highly relevant in determining the value of [her] report." Gates, 462 U.S. at 230.

The defendants aver that the 911 caller provided information indicating that Kahule Cochrane was located in Crawford Village, which was an apartment complex where he

was known to live.  However, in deciding not to contact the 911 caller, Holtzman had no basis to discern if the caller was honest, or whether her information was reliable.  That is, Holtzman had no idea if the caller was an eyewitness who saw Cochrane enter Apartment 10G armed and accompanied by other individuals, or whether the caller was merely trying to get the police to raid the plaintiffs' apartment.  Clearly, the defendants had no basis for evaluating the caller's veracity, reliability or knowledge.

Probable cause "is dependent upon both the content of information possessed by police and its degree of reliability."  Alabama v. White, 496 U.S. 325, 330 (1990).  "Generally, the question of probable cause in a section 1983 damage suit is one for the jury, ... particularly ... where the probable cause determination rests on credibility conflicts."  Merkle v. Upper Dublin School District, 211 F.3d 782, 788 (3d Cir. 2000).  Here, having failed to corroborate the details of the informant's tip through independent police work, we cannot say as a matter of law that the individual defendants had probable cause to search the plaintiffs' apartment without a warrant.

With respect to the defendants' alleged use of excessive force, it is clear that the "use of excessive force is itself an unlawful seizure under the Fourth Amendment."  Couden, 446 F.3d at 496, citing Graham, supra, 490 U.S. at 395.  To determine if challenged conduct constitutes excessive force, we must ascertain the objective reasonableness of the force used, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  Other factors to be considered in a Fourth Amendment "reasonableness" inquiry include "the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be

armed, and the number of persons with whom the police officers must contend at one time." Couden, 446 F.3d at 497, quoting Sharrar, supra, 128 F.3d at 822. In evaluating the reasonableness of an officer's action, "the court must take into consideration the fact that 'police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation.'" Couden, 446 F.3d at 497, quoting Graham, 490 U.S. at 397.

As recited above, the only officers to enter Apartment 10G were defendants Lopretto, Campbell, Gebis and Wynn. Upon entering the apartment, those officers confronted Mr. Mar and his 10-year old son, both of whom were unarmed, posed no threat to the safety of the officers, and never attempted to flee their home. The plaintiffs testified that the officers threw Mr. Mar on the floor, forcefully restrained him there for a period of time, and placed a gun at his head. The plaintiffs further testified that an officer forcefully shoved Darrell Mar, Jr. against a wall and placed a gun to his face. Since no evidence shows that the plaintiffs were armed, posed a threat to the officers, or attempted to flee the scene, we cannot say as a matter of law that the force used by the officers was reasonable. See, Couden, 446 F.3d at 497; also see, Baker, supra, 50 F.3d at 1193 (where the Court found liability for excessive force where officers pointed guns at and handcuffed members of a family where there was no evidence showing that the officers needed to use that kind of force).

Since material issues of fact exist as to whether the individual defendants had probable cause to search the plaintiffs' apartment and used excessive force during the search, they are not entitled to qualified immunity on these claims. Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not

12

violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Qualified immunity is available if "reasonable officials in their position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Larsen v. Senate of the Commonwealth of Pennsylvania, 154 F.3d 82, 87 (3d Cir. 1998).   In light of the Fourth Amendment rulings in Gates, Graham and Baker cited above, which was the decided case law at the time, and as the defendants did not corroborate the informant's tip in this case and engaged in force which may have been excessive, they are not entitled to qualified immunity.

Nonetheless, the record shows that during the search of Apartment 10G, defendants Holtzman, Bostic, Jr., Taylor, Gould and Arthur Pero remained outside the apartment in order to secure the area.  Since these officers had no contact with the plaintiffs, they are entitled to summary judgment on the claims of excessive force in Counts V and VI.

In Counts VII and VIII, all individual defendants with the exception of Police Chief Joseph Pero are said to be liable for assault and battery.  However, the claims for assault and battery cannot lie against defendants Holtzman, Bostic, Jr., Taylor, Gould and Arthur Pero, for as discussed above, none of them entered the apartment or had any contact with the plaintiffs.

As to the plaintiffs' request for punitive damages, their request for such damages from the City and the individual defendants acting in their official capacities should be dismissed.  Indeed, the Supreme Court has held that punitive damages are not recoverable against a municipality in a § 1983 suit.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).  However, the police officers in their individual capacities may be liable for punitive damages if their conduct is shown to be motivated by evil motive or intent, or if it involves a

reckless or callous indifference to the federally protected rights of the plaintiffs.  See, Smith v. Wade, 461 U.S. 30, 56 (1983); Feldman v. Philadelphia Housing Authority, 43 F.3d 823, 833 (3d Cir. 1994).

Therefore, for reasons discussed above, it is recommended that the defendants' motion for summary judgment (Document No. 65) be granted as to Counts III and IV of the second amended complaint in their entirety, Counts V and VI on the claim for use of excessive force against defendants Holtzman, Bostic, Jr., Taylor, Gould, and Arthur Pero, Counts VII and VIII as to defendants Holtzman, Bostic, Jr., Taylor, Gould, and Arthur Pero, and on the claim for punitive damages against the City and the individual defendants in their official capacities, and denied in all other respects.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                s/ ROBERT C. MITCHELL
                United States Magistrate Judge

Dated: March 6, 2007