IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARRELL J. MAR, SR., Individually and ) | |
| DARRELL J. MAR, SR. as Parent and ) | |
| Natural Guardian of DARRELL J. MAR, JR., ) | |
|       Plaintiffs, ) | |
| ) | |
| vs ) | Civil Action No. 05-19 |
| ) | |
| CITY OF MCKEESPORT, JOSEPH PERO, ) | |
| WAYNE DENNIS WYNN, DEPUTY CHIEF ) | |
| MARK HOLTZMAN, DENNIS LOPRETTO, ) | |
| TODD GEBIS, SAMUEL L. BOSTIC, JR., ) | |
| JAMES TAYLOR, ARTHUR PERO, SCOTT ) | |
| CAMPBELL, SHELLY GOULD, individually ) | |
| and in their official capacity, ) | |
|       Defendants. ) | |

**MEMORANDUM ORDER**

Pending before the Court for disposition are the REPORT AND RECOMMENDATION dated March 6, 2007 (Document No. 70) and the OBJECTIONS TO REPORT AND RECOMMENDATION (Document No. 71) filed by Defendant City of McKeesport. Plaintiffs filed a letter (Document No. 72) stating that they did not "feel the need to respond" to the objections because they were satisfied with the content and conclusions of the Magistrate Judge. The Objections are ripe for disposition and the Court must accept, reject, modify or recommit the Report and Recommendation.

This is a Section 1983 case arising out of an incident on November 29, 2004, in which members of the McKeesport police department entered Plaintiffs' apartment without a search warrant, based on an informant's tip. The facts are set forth at length in the Report and

Recommendation and that factual recitation is adopted for the purpose of this Memorandum Opinion.[1]

In summary, a dispatcher from Allegheny County 911 informed the McKeesport police that they had received a call informing that Kahule Cochrane was located in Apartment 10G in Crawford Village, where he was armed, dangerous and accompanied by at least one other armed individual. Deputy police chief Mark Holtzman, the acting shift commander, received the information and verified that the 911 dispatcher had obtained the informant's name and phone number. Kahule Cochrane was a suspect in a recently-committed murder, and was known to police to be violent and to reside in Crawford Village. Based on this information, Holtzman decided that exigent circumstances justified an immediate search without a warrant and assembled all available officers. Holtzman did not speak to the informant. Upon execution of the search of Apartment 10G only Plaintiffs, a father and his ten year old son, were found to be there.

Several officers formed a perimeter and Lieutenant Lopretto knocked on the door and announced himself as a police officer. When Darrell Mar, Sr., unlocked the door, it was forced open, and four officers entered the apartment.[2] Officers then threw Mr. Mar to the floor, forcefully restrained him and placed a gun to his head before permitting him to sit on a couch. Another officer grabbed Darrell Mar, Jr., by the shirt sleeve, forcefully shoved him against a wall and pointed a gun in his face. The officers used profanity and gave no explanation for

---

[1] Plaintiffs did not dispute the Statement of Material Facts (Document No. 67) filed by Defendants in support of their motion for summary judgment.

[2] The Court has construed the record in the light most favorable to Plaintiffs.

their actions. There is no evidence in the record that either Plaintiff was struck by the officers or suffered physical injury. The search of the apartment lasted approximately five minutes.

Plaintiffs' second amended complaint sets forth nine counts. Counts I and II contend that the City violated their constitutional rights due to the City's alleged "failure to train" its police officers regarding a proper search and the use of excessive force and that the City had a policy of condoning improper police conduct. Counts III- IV are directed at police chief Joseph Pero on a theory of supervisory liability. Counts V-VIII are directed at the individual officers, alleging an unreasonable search and the use of excessive force, and assault and battery. Count IX asserts a retaliation claim, apparently against all Defendants although only Officer Wynn is identified in that portion of the second amended complaint. Defendants filed a joint motion for summary judgment.[3]

### STANDARD OF REVIEW

The standard of review of this Court for a magistrate judge's Report and Recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1)(C). Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's Report and Recommendation on dispositive motions as follows:

---

[3] Although Defendants moved for summary judgment on all counts, the Court notes that neither party addressed Count IX in their summary judgment briefs.

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b). It is reversible error for the district court to fail to conduct a de novo review of a magistrate judge's report and recommendation where such review is required. *Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429 (3d Cir. 2005).

A district court may accept, reject or modify the findings or recommendations made by the magistrate judge regardless of whether or not objections are made to the Report and Recommendation. 28 U.S.C. § 636(b)(1)(C). In *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987), the Court of Appeals explained that the "better practice" is for the district judge to give some level of review to "dispositive legal issues" raised by the Report and Recommendation. The authority and responsibility to make an informed, final determination remains with the district judge. *Id.* The adoption of a Report and Recommendation is a judicial act that represents the district court's reasoned judgment and no appealable decision exists until that judicial act is performed. *Id.* These considerations apply with full force in the instant case. The individual officers have raised dispositive legal defenses including qualified immunity, which if applicable, would entitle the officers to avoid trial. Accordingly, the Court will review the legal conclusions in the Report and Recommendation as to the individual officers even though they did not file objections.

**DISCUSSION**

A. Objections Filed by the City of McKeesport

As noted above, Plaintiffs asserted claims against the City in Counts I and II based on two theories: (1) failure to properly train their officers; and (2) that the alleged deprivation of their constitutional rights was caused by a policy or custom of the City. The Report and Recommendation rejected Plaintiffs' "failure to train" theory, but agreed with Plaintiffs regarding the "policy or custom" theory. The Report and Recommendation found that Deputy Chief Holtzman was in charge of the police department on the evening in question and made a deliberate decision to execute the warrantless search. The Report and Recommendation then stated: "To the extent that search was unlawful, Holtzman may have been deliberately indifferent to the plaintiffs' Fourth Amendment rights, as he directed and participated in the search of Apartment 10G. Based on these facts, the City may be liable for violating the plaintiffs' civil rights." Thus, the Magistrate Judge recommended that the motion for summary judgment be denied as to Counts I and II.

  The City filed objections. It contends that the Report and Recommendation did not properly apply the doctrines governing municipal liability. In particular, the City argues that even though Deputy Chief Holtzman was the officer-in-charge on November 29, 2004, he was not a final policymaker such that the City would be liable. In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986), the Supreme Court explained that the mere fact that an employee has discretion in the exercise of a particular function does not give rise to municipal liability based on the exercise of that discretion. Thus, there is a key distinction between an action that establishes municipal policy and an official's discretionary decision in the course of his

delegated duties. Defendants point out that pursuant to the Third Class City Code, city council prescribes rules and regulations for the organization and government of the police force and the mayor supervises police conduct.

The City's objections have merit. There is no evidence in this record to establish that the deputy chief of police is the final policy-maker for the City of McKeesport such that his actions represent the implementation of official policy. Rather, Deputy Chief Holtzman had merely been delegated supervisory discretion to serve as the officer-in-charge of the police force on the evening in question. His decision to execute a warrantless search in response to an informant's tip was simply an operational decision and was not a final, official statement of policy by the City. Accordingly, the City of McKeesport's objections to the Report and Recommendation are SUSTAINED, this aspect of the Report and Recommendation will not be adopted, and the City's Motion for Summary Judgment on Counts I and II will be GRANTED.

B. Legally Dispositive Issues Raised by the Individual Officers

In keeping with the "better practice" described in *Henderson*, the Court has analyzed the legally dispositive issues raised by the individual officers. After the Court's review, there are three additional aspects of the Report and Recommendation that will not be adopted.

1. Unreasonable Search Claims vs. Rank and File Officers

The individual defendants asserted a defense of qualified immunity as to the claims of an unreasonable search, and argued in their brief that "the issue must be analyzed differently for Deputy Chief Holtzman and the remaining officers." Defendants contend that even if

Holtzman is not entitled to qualified immunity,[4] the rank and file officers are entitled to reasonably rely on the directions and decisions of their superior officer. In addition, the officers argue that the activity at issue did not constitute an obvious violation of established law.

The Report and Recommendation did not address these arguments directly. Instead, it concluded that because material issues of fact existed as to probable cause and excessive force, none of the officers were entitled to qualified immunity. The Magistrate Judge made no distinction between Holtzman and the other officers, stating merely that "defendants did not corroborate the informant's tip."

This Court has reviewed the cases cited by the Individual Defendants and finds them to be persuasive. It is well-established that officers are entitled to reasonably rely on the information and decisions of fellow and superior officers. *See Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2002), *aff'd on other grnds. sub nom. Groh v. Ramirez*, 540 U.S. 551 (2004) (distinguishing duty of leaders of search from that of rank and file officers). In *Liu v. Phillips*, 234 F.3d 55, 57-58 (1st Cir. 2000), the Court stated: "Police officers without complete knowledge of the facts regularly participate in arrests ordered or authorized by superiors or by fellow officers. Where the authorizing officer has made a factual mistake but the mistake is not apparent, immunity for the officer who reasonably assisted is well settled.." (Citation omitted). In *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997), the Court of Appeals for the Third Circuit explained: "the actions of a police officer acting in reliance on what proves to be the flawed conclusions of a fellow police officer may be reasonable nonetheless and thus

---

[4] The Court accepts the Recommendation that Deputy Chief Holtzman is not entitled to summary judgment on the unreasonable search claims in Counts V and VI.

protected by the doctrine of qualified immunity" if the statements of that officer made it reasonable to believe that probable cause existed. The record is undisputed that Holtzman directed the other officers to participate in an exigent search for a murder suspect based on an informant's tip. In this time-sensitive circumstance, it was reasonable for the rank and file members of the team to accept their superior officer's conclusion that there was probable cause for the search. *See Bilida v. McCloud*, 211 F.3d 166, 174-75 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (e.g. a warrant, probable cause, exigent circumstances).") Therefore, all officers except Holtzman are entitled to summary judgment on the unreasonable search claims.

2. Excessive Force Claims

All Defendants moved for summary judgment on the excessive force claims. After a review of the parties' arguments and the applicable legal authorities, the Court concludes that summary judgment is appropriate. The Report and Recommendation concluded that defendants Holtzman, Bostic, Taylor, Gould and Pero had no contact with Plaintiffs, and therefore it recommended summary judgment on the excessive force and assault and battery claims as to these Defendants. The Court accepts this Recommendation. The Report and Recommendation concluded that the officers who actually entered the apartment (Lopretto, Campbell, Gebis and Wynn) were not entitled to summary judgment. This Court acknowledges that these officers did

have contact with Plaintiffs – violent, intrusive, demeaning contact– but under Third Circuit precedent, such contact was not objectively unreasonable under the circumstances of this case.[5]

The Report and Recommendation correctly lists the factors that must be considered in determining whether the force used by officers was objectively reasonable, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, whether he is actively resisting arrest or attempting to evade arrest by flight, the duration of the officers' action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (citations omitted).  In evaluating the officers' conduct, courts are cautioned to remember that police officers are forced to make split-second judgments in tense, uncertain and rapidly evolving circumstances.  *Id.*  Certainly, this caution is applicable in this case, in which the officers were expecting to confront an armed and violent murder suspect who was allegedly accompanied by other armed compatriots.

In analyzing the excessive force factors, the Report and Recommendation did not evaluate the threat posed by the murder suspect, but instead simply stated that Plaintiffs "were unarmed, posed no threat to the safety of the officers, and never attempted to flee their home." This focus is off-target.  The relevant analysis is that the crime at issue was murder, that the suspect, Kahule Cochran, posed an immediate deadly threat to officers and others, that he was actively evading and resisting arrest, that he was armed and that officers reasonably anticipated

---

[5]The foreseeable impact on innocent parties of a search like that conducted by the officers in this case illustrates the importance of the constitutional mandate that such searches be initiated only upon probable cause.

that they would confront multiple armed and violent persons.  The force used by the officers was significant, consisting of forcing open the door, brandishing weapons, physically moving Plaintiffs to positions of submission, and use of profanity.  However, the use of force lasted for less than five minutes and neither of the Plaintiffs was physically injured.

The Defendants cited to analogous cases in their summary judgment brief which were not addressed in the Report and Recommendation.  In *E.G. Torres v. United States*, 200 F.3d 179, 185 (3d Cir. 1999), the Court of Appeals explained that it was reasonable for officers to handcuff occupants of a house face-down on the floor during a search for narcotics due to the legitimate interests in preventing flight, preventing disposal of narcotics and agent safety.  The Court explained that the risk of harm to all involved is minimized if officers exercise unquestioned command over the situation.  *Id.* at 186 (citing *Michigan v. Summers*, 452 U.S. 692 (1981)).  In *Glass v. City of Philadelphia*, 455 F. Supp.2d 302 (E.D. Pa. 2006), the Court concluded after a non-jury trial that officers had not used excessive force by pointing guns at plaintiffs, yelling profanity, handcuffing them, and placing them in police car, even though plaintiffs were not actively resisting arrest.  Also instructive, although not cited by Defendants, is *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997), in which the Court held that officers had not used excessive force even though the SWAT team was used in a domestic violence situation and police forced occupants to lie face down in the dirt at gunpoint and threatened to blow their f***ing heads off.  *Accord Mellott v. Heemer*, 161 F.3d 117 (3d Cir. 1998)

(reasonable for officers to load and point weapons and push occupant into a chair in effort to discourage expected resistance to eviction).[6]

Under the factors for determining the reasonableness of Defendants' use of force in this case, it is clear that their conduct was well within the parameters found to be lawful in *Torres, Glass, Mellott* and *Sharrar*. Even assuming, arguendo, that the use of force was excessive, the officers would be entitled to qualified immunity because it would not have been clear to a reasonable officer that their conduct was unlawful. Accordingly, the motion for summary judgment will be granted on the claims of excessive force as to all Defendants.

### 3. Assault and Battery Claims

The Court finds that summary judgment should be granted to all Defendants as to the assault and battery claims. Pennsylvania law, 18 Pa. C.S.A. § 508, creates a privilege for officers to use reasonable force in the exercise of their duties. For the reasons articulated above, the Court finds that the force used in this case was reasonable. Moreover, in *Commonwealth v. Smythe*, 369 A.2d 300, 304 (Pa.. Super. 1976), the Court explained that an officer will only be denied the privilege created in Section 508(a)(2) if he actually knows that the use of force is unconstitutional. *See also Renk v. City of Pittsburgh,* 641 A.2d 289, 293 (Pa.1994) (noting that assault and battery are intentional torts that require proof that the officer

---

[6]On May 21, 2007, the United States Supreme Court reiterated these principles in *Los Angeles County v. Rettele*, No. 06-605 (per curiam) (no Fourth Amendment violation where officers ordered persons out of bed and forced them to stand naked for one-two minutes even though the warrant was for persons of a different race). The Supreme Court explained that "officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search" even though the resulting frustration, embarrassment and humiliation of occupants is real.

intentionally used excessive force). On this record, there is no evidence that any of the officers that went into the apartment had actual knowledge that the search was improper or used force that was intentionally excessive. Accordingly, Defendants' motion for summary judgment will be granted as to Counts VII and VIII.

In all other respects, the Court adopts the Report and Recommendation as the opinion of this Court.

### CONCLUSION

For the reasons set forth above, it is **ORDERED, ADJUDGED AND DECREED** that Defendants' MOTION FOR SUMMARY JUDGMENT (Document No. 65) is **GRANTED** as to Counts I and II of the second amended complaint in their entirety; Counts III and IV in their entirety; Counts V and VI on the claims of unreasonable search as to all Defendants except Holtzman; Counts V and VI on the claims of excessive force as to all Defendants; Counts VII and VIII in their entirety; and on the claim for punitive damages against the City of McKeesport and the individual defendants in their official capacities; and **DENIED** in all other respects. Accordingly, the only claims remaining in the case are Counts V and VI against Deputy Chief Holtzman and Count IX.

So **ORDERED** this 25th day of May, 2007.

BY THE COURT:

s/ Terrence F. McVerry  
United States District Court Judge

cc:   The Honorable Robert Mitchell
United States Magistrate Judge

George M. Evan
Email: gmevan@teesp.com

Leonard E. Sweeney
Email: thelawfirm@pghpa.us