IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRELL J. MAR, SR., Individually and )
DARRELL J. MAR, SR. as Parent and )
Natural Guardian of DARRELL J. MAR, JR., )
           Plaintiffs, )
 )
      vs                  )    Civil Action No. 05-19
 )
CITY OF MCKEESPORT, JOSEPH PERO, )
WAYNE DENNIS WYNN, DEPUTY CHIEF )
MARK HOLTZMAN, DENNIS LOPRETTO, )
TODD GEBIS, SAMUEL L. BOSTIC, JR., )
JAMES TAYLOR, ARTHUR PERO, SCOTT )
CAMPBELL, SHELLY GOULD, individually )
and in their official capacity, )
           Defendants. )

REPORT AND RECOMMENDATION

I. Recommendation:

      It is respectfully recommended that the defendants' supplemental motion for summary judgment on Count IX of the second amended complaint (Document No. 80) be granted.

II. Report:

      Presently before the Court is the defendants' supplemental motion for summary judgment on Count IX of the second amended complaint. For reasons discussed below, the supplemental motion for summary judgment should be granted.

      On September 7, 2006, plaintiffs Darrell J. Mar, Sr., and his son, Darrell J. Mar,

Jr., filed a nine-count second amended complaint.[1]  Counts I-VIII of the second amended complaint pertain to an incident which occurred on November 29, 2004, when members of the McKeesport Police Department entered the plaintiffs' apartment without a search warrant to search for another individual who was wanted for a recently-committed murder.  The plaintiffs complain that the intrusion into their home violated their civil rights under 42 U.S.C. § 1983, at which time they were subjected to egregious conduct which caused them injuries.  In Count IX of the second amended complaint, plaintiff Darrell Mar, Sr. contends that in retaliation for having commenced this action, the defendants followed him on several occasions, stopped a vehicle he was riding in, and searched him without cause.

On January 31, 2007, the defendants moved for summary judgment on the plaintiffs' claims, but their motion failed to address the claim in Count IX.  On May 25, 2007, the Court issued a Memorandum Order which granted in part, and denied in part the defendants' motion for summary judgment, leaving three claims for trial.  The remaining claims in this case are the plaintiffs' claims in Counts V and VI against defendant Holtzman for unlawfully searching their home, and Mr. Mar, Sr.'s claim in Count IX against all defendants for retaliating against him for filing this suit.

On July 11, 2007, the defendants filed a supplemental motion for summary judgment on Count IX after the Court granted them leave to do so.  In support of summary judgment, the defendants argue that Mr. Mar, Sr. cannot prevail on his retaliation claim against

---

1.    Named as defendants in the second amended complaint are the City of McKeesport, its Police Chief Joseph Pero, its Deputy Chief Mark Holtzman and its police officers Wayne Dennis Wynn, Dennis Lopretto, Todd Gebis, Samuel L. Bostic, Jr., James Taylor, Arthur Pero, Scott Campbell and Shelly Gould.

them for several reasons.  Among their arguments, the defendants correctly aver that while Count

IX is directed at all defendants, the claim only identifies Officer Wynn and makes specific

allegations as to him, no other defendant.

Count IX, which is set forth at ¶ 159 of the second amended complaint, provides

as follows:

> Plaintiff, Darrell Mar Sr., has been followed from his home
> in Crawford Village to various locations within McKeesport
> on at least 4 occasions by various members of the City of
> McKeesport Police Department.
>
> a.      On one occasion on April 2, 2005 at approximately
> 7:40 p.m., Plaintiff and a friend left Plaintiff's apartment in
> Crawford Village and were stopped.  The officers asked
> Plaintiff's friend, and driver of the vehicle, to provide owners
> card and proof of insurance, which he did.  Officers th[e]n
> proceeded to search both parties personally and ... insisted
> on searching the vehicle.  There were no citations issued, no
> traffic warnings, and no warrants.  Plaintiff and his friend, after
> being detained for a period of time, ... were released.  There
> was no probable cause for this stop.
>
> b.      During said stop, an Officer by the name of Wynn asked
> Plaintiff if he recognized the officer.  Plaintiff said he did not
> recognize him.  Officer Wynn taunted Plaintiff again about his
> identity.  Plaintiff then asked if the Officer was one of the
> officers who raided his home and the officer said 'Yep, I sure was.'
>
> c.      Defendants are intentionally attempting to intimidate,
> demean and belittle Plaintiff by following him and searching him.
> Defendants are merely retaliating against Plaintiff for Plaintiff's
> filing suit against them.

In their supplemental motion, the defendants seek summary judgment on behalf of

Officer Wynn on grounds that the plaintiffs cannot establish a retaliation claim against him.  We

address this claim below.  As to the other defendants, the movants argue that summary judgment

on Count IX is appropriate, as the claim fails to specify acts of retaliatory misconduct attributed

to any defendant except for Officer Wynn, and no facts show that the alleged misconduct was based on a formal policy or custom of the City of McKeesport.

Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movants are entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

It is well settled that a municipality like the City of McKeesport "cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior." Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000), cert. denied, 121 S.Ct. 1081 (2001). Rather, to establish a § 1983 claim against it, a complainant "must demonstrate that the violation of his rights was caused by either a policy or custom of the municipality." Id.

In Berg, supra, the Third Circuit Court of Appeals explained:

> Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict... Customs are practices of state officials so permanent and well settled as to virtually constitute law.

Id. (citations omitted). In hopes of identifying a municipal policy or custom which led to the alleged retaliation against Mr. Mar, Sr., the plaintiffs point to acts undertaken by the McKeesport Police Department and Housing Authority which are detailed in the defendants' uncontroverted statement of material facts.

Those facts reveal that the plaintiffs reside in Crawford Village, which is a public housing project located in the City of McKeesport; that Crawford Village is a high crime, high drug area which is patrolled by McKeesport Police Officers as part of their regular duties; that the Housing Authority, which maintains Crawford Village, has a contract with McKeesport,

4

whereby off-duty McKeesport Police Officers patrol Crawford Village as employees of the

Housing Authority; that the McKeesport Housing Authority maintains a "trespass list" of

individuals not authorized or permitted to be on the property; and that the McKeesport Housing

Authority and Police Department monitor traffic in and out of Crawford Village and stop

vehicles on a regular basis to determine if those vehicles are authorized to be there.[2]

With respect to Officer Wynn's complained-of acts on April 2, 2005, the record

shows as follows:

> On April 2, 2005, while on patrol in Crawford Village, Officer
> Wynn observed a white male enter Building 10.  Officer Wynn
> could not identify the apartment that the white male entered.
> Officer Wynn had never seen the white male before, so he
> assumed that he did not live in Crawford Village.  He, therefore,
> proceeded to run the registration plate of the vehicle in which the
> male arrived, and the address for the registration of the vehicle
> was located in Irwin, PA.  Approximately two minutes after the
> white male entered the apartment, he exited the apartment with a
> black male.  Because of suspicion of drug activity, the fact that he
> did not recognize the white male or the black male, the fact that
> the vehicle in which the white male arrived was registered to an
> address in Irwin, PA, and the fact that the activity occurred on
> private property, Officer Wynn determined to pull the vehicle over.
> Officer Wynn did so, asked the driver to identify himself,
> obtain[ed] the driver's permission to search the driver and the car,
> and obtained the passenger's permission to search the passenger.
> After the search was completed, the driver and passenger were
> permitted to leave.[3]

Based on these facts, the plaintiffs insist that McKeesport has a policy or custom of profiling

Crawford Village as a "high crime, high drug area" which needs to be regularly patrolled,

requires it police officers to stop traffic there on a regular basis to determine if vehicles are

---

2.    See, defendant's undisputed statement of material facts at ¶¶ 1-5.

3.    Id. at ¶ 6.

authorized to be there, and views a meeting between a white man and black man as suggestive of drug activity, forming a basis to stop and investigate them for such activity.[4]

The Third Circuit Court of Appeals holds that where "a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  Berg, 219 F.3d at 276.  Here, to the extent the aforesaid acts of monitoring traffic in and out of Crawford Village and stopping vehicles to ascertain if they were authorized to be there constitute a municipal policy or custom, the plaintiffs have not shown that such policy or custom resulted in Mr. Mar, Sr. being stopped and searched in retaliation for having filed this lawsuit.  To the contrary, the record indicates that Mr. Mar. Sr. was stopped and searched by Officer Wynn due to Wynn's suspicion of drug activity, the fact that Wynn did not recognize Mr. Mar or his companion, and because the vehicle they were riding in was registered to an address in Irwin, PA, which did not correspond with Crawford Village.[5]  Indeed, prior to stopping the vehicle in question on April 2, 2005, Officer Wynn did not even know that Mr. Mar, Sr. was a passenger in the vehicle.[6]  Based on the foregoing, the retaliation claim in Count IX cannot lie against the City of McKeesport.

Summary judgment on Count IX is also appropriate as to all individual defendants who were not personally involved in the events of April 2, 2005.  An individual defendant in a § 1983 action must have personal involvement in the alleged wrongs.  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997).  A supervisory official may be rendered

---

4.   See, plaintiffs' brief in opposition to the current motion at p. 2 (Document No. 87).

5.   See, defendant's undisputed statement of material facts at ¶ 6.

6.   Id. at ¶ 7.

personally liable under § 1983 if he participated in violating a plaintiff's rights, or directed others to violate such rights, or had knowledge of and acquiesced in such violations.  Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995).  Here, the plaintiffs have failed to produce any evidence of retaliatory misconduct which implicates any defendant other than Officer Wynn.  Thus, as to all other defendants, summary judgment on Count IX is proper.

With respect to Officer Wynn, it is alleged in Count IX that on April 2, 2005, he retaliated against Mr. Mar, Sr. for filing this action by stopping a vehicle Mr. Mar was riding in, searching him, as well as the driver of the vehicle and the vehicle itself, without cause, after which he told Mr. Mar that he was one of the officers who raided his home.  In moving for summary judgment on Count IX, the defendants argue that Mr. Mar, Sr. cannot demonstrate that Officer Wynn retaliated against him for filing this suit.

To prove that the defendants violated his First Amendment rights by retaliating against him for filing this suit, the plaintiff must show that: (1) he engaged in protected activity; (2) the defendants responded with retaliation; and (3) the protected activity was the cause of the retaliation.  Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  Accord, Livingston v. Borough of McKees Rocks, 223 Fed. Appx. 84, 88 (3d Cir. 2007).

The defendants concede that Mr. Mar, Sr. engaged in a protected activity by filing this lawsuit against them.  Still, to prevail on his retaliation claim, the plaintiff must show a causal link between the protected speech and the alleged retaliation.  Id.  Our Court of Appeals has explained that while the temporal proximity of alleged retaliation to protected speech is probative of causation, "the timing of the alleged retaliatory action must be 'unusually suggestive' of the retaliatory motive before a causal link will be inferred."  Marasco, supra, 318

F.3d at 512, quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997); accord,

<u>Livingston</u>, <u>supra</u>, 223 Fed. Appx. at 88.  Such an inference may be drawn where two days pass

between the protected activity and the alleged retaliation, but not where 19 months have elapsed.

<u>Marasco</u>, 318 F.3d at 512.  In cases as here, where the timing of the alleged retaliation is not so

close to the protected activity as to be unduly suggestive of retaliatory motive, additional

evidence of causation must be shown.  <u>Id.</u> at 513.

The plaintiffs commenced this action on January 7, 2005 by filing their

original complaint against the City of McKeesport, its Police Chief Joseph Pero, and several

unknown members of the McKeesport Police Department.  It was not until April 2, 2005 that

Officer Wynn engaged in his alleged retaliation.[7]  Since the timing of Officer Wynn's alleged

misconduct was not so close in proximity to the filing of this suit as to be unduly suggestive of

retaliatory motive, additional evidence of causation must be shown.  <u>Id.</u>

Here, the plaintiffs have not produced evidence of retaliation.  As recited above,

on April 2, 2005, Officer Wynn stopped and searched a vehicle Mr. Mar, Sr. was riding in based

on Wynn's suspicion of drug activity.[8]  Prior to stopping the vehicle, Officer Wynn did not know

that Mr. Mar, Sr. was a passenger in it.[9]  In fact, it was not until Officer Wynn asked the

---

7.    Although it is alleged in Count IX that Mr. Mar, Sr. was followed on at least 4 occasions
by members of the McKeesport Police Department, Mr. Mar, Sr. testified that his only interaction
with McKeesport police officers following the raid on his home occurred when Officer Wynn
stopped the vehicle he was riding in (which occurred on April 2, 2005).  See, deposition of
Darrell Mar, Sr. at p. 77 (at Appendix 2 to defendants' statement of material facts).

8.    See, defendant's undisputed statement of material facts at ¶ 6.

9.    Id. at ¶ 7.

passenger in the vehicle to identify himself that Wynn learned it was Mr. Mar, Sr.[10]  Since the

plaintiffs have not produced evidence showing that Officer Wynn retaliated against Mr. Mar, Sr.

for filing this action, summary judgment on Count IX is appropriate.

Therefore, it is recommended that the defendants' supplemental motion for

summary judgment on Count IX (Document No. 80) be granted.

Within thirteen (13) days after being served with a copy, any party may serve and

file written objections to this Report and Recommendation.  Any party opposing the objections

shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file

timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ ROBERT C. MITCHELL
United States Magistrate Judge

Dated: August 30, 2007

---

10.    See, deposition of Officer Dennis Wynn at pp. 19-20 (at Appendix 3 to defendants'
statement of material facts).